DENNISTON *v.* SCHOOL DISTRICT No. 11, IN GOFFSTOWN.

School districts, being enabled by law to sue and be sued, have, in consequence, the power to appoint and instruct agents to prosecute and defend; and may lawfully instruct them to withdraw defences and to confess judgment.

If three or more voters apply to the prudential committee to call a special meeting of a school district, on a day named, and they refuse, but within ten days call a meeting for the same purposes on a more distant day, it is such a refusal to call the special meeting, as to authorize the selectmen to call it according to the provisions of the Revised Statutes, chapter 70, section 5.

A warrant of the selectmen is valid for such purpose, if posted up after the ten days, though dated before.

ASSUMPSIT, for services as teacher in district No. 11, in

Goffstown, for a period of ten weeks, commencing December 4, 1843.

It appeared that the plaintiff was engaged and commenced to teach the above school; that after keeping the school for three weeks he was informed by the member of the prudential committee who had hired him, that there was difficulty in the district, and that he had better leave; that he refused to leave, and continued to keep the school for the space of ten weeks.

It also appeared that at a meeting of the district, duly held on May 2, 1845, an agent was appointed for the purpose of defending this action, and that the agent so appointed has defended, as authorized.

It appeared that Shubael T. Jones, Daniel Little, and A. F. Carr were appointed superintending school committee for said town for the year 1843, and that Richard B. Hadley was prudential committee for said district for that year. It further appeared that in the fall of the year 1843, Hadley contracted with Harvey Denniston to keep school in district No. 11 for twelve dollars per month, and that, at the time said contract was made, told Denniston he must procure a lawful certificate and present it; that after this, and before the school began, Denniston procured what purported to be a certificate signed by A. F. Carr, one of said superintending school committee, and by him alone, and presented it to Hadley, and asked him if that was lawful; to which said Hadley replied that he did not know whether it would stand law or not.

It further appeared that on the 27th of September, 1845, seven of the legal voters of the district presented to the prudential committee for the district for that year a petition in writing, requesting them to call a meeting of the district at their school-house, on Saturday, the 18th day of October, then next, to see if the district would withdraw any defence to the action then pending in the name of the plaintiff against the district, and to take upon that subject such action as the district might deem proper.

At the same time that this petition was presented to the prudential committee, a warrant, embracing the subjects of the petition, was also presented to them to sign for a meeting on the 18th day of October.

Two of the committee refused to sign, and issue the warrant, it being ready for signature.

On the 6th day of October, 1845, the petition and warrant for the meeting on the 18th of October were again presented to one of the committee, who again refused to sign the warrant; and on the morning of the 7th of October again also to another of the committee, who also again refused to sign the same. On the same day two of said committee made a warrant under their hands and seals, embracing all the matters set forth in the before mentioned warrant, calling a meeting on the 18th of November instead of October, as asked for in the petition, and on the same day they posted up a certified copy of the warrant according to law. They also, on the 7th of October, notified the selectmen of Goffstown that they had issued said warrant for a meeting on the 18th of November, and had given due notice of the same.

On the same 7th of October, after the petition had been presented to the committee, sixteen of the legal voters of the district presented a petition to the selectmen, dated on the 7th of October, to call a meeting of the district on the 18th of October. The substance of the petition was the same as that presented to the prudential committee. It also stated that the committee had refused to call such meeting, although specially requested so to do by a petition in writing, duly presented, &c. On the same 7th of October one of the selectmen signed a warrant embracing the question of the defence of this action, and calling upon the legal voters of the district to meet at the school-house on Saturday, the 18th day of October next, at 6 o'clock in the afternoon.

On the next day another member of the board of select-men signed the warrant, and on the same day a copy was made and certified, and posted up.

On the 18th of October, 1845, a meeting was held in the district, and it was voted, by twenty to nineteen, that all further defence to the action then pending in favor of Harvey Denniston against the district, be withdrawn, and judgment be allowed in said suit against the district.

On motion, it was voted by the same vote that an agent be appointed in behalf of the district, to see the foregoing vote carried into effect, and the suit disposed of according to said vote. At the October term of the court the agent appointed at the meeting of the 18th withdrew all further defence on behalf of the district, and confessed the plain-tiff's action ; and it was agreed by the parties that judg-ment should be entered for the plaintiff or defendant, as the opinion of this court shall be upon the foregoing case.

*Bell,* for the plaintiff.

*Steele,* and *Butterfield,* for the defendants.

WOODS, J. The law provides that "every school dis-trict shall be a body politic and corporate, and may sue and be sued." Rev. Stat., chap. 70, sec. 1. A power clearly and necessarily resulting from that of suing, and from the capacity of being sued, is that to appoint suit-able agents and attorneys for conducting such suits and defences as the district may be involved in, and the power to settle and to issue instructions to such agents and attor-neys. The power to become a party to an action also clearly involves that of adjusting the action, and of be-coming nonsuit, of suffering default, and of confessing judgment. Nothing short of all the powers that are ordi-narily incident to the conduct of a suit at law or in equity, could possibly have been intended by the legislative grant

of corporate existence, and the capacities enumerated in the section referred to.

There can be no doubt, therefore, that the school district that has been made defendant in this action had the right legally to withdraw the defence that had been instituted; and that they had also the power to appoint and to instruct an agent to carry the purpose of the district into effect.

By sec. 5 of chap. 70 of the Revised Statutes provision is made for calling special meetings of school districts. If the prudential 'committee shall neglect for the space of ten days, after application in writing by three or more voters of the district, to call such special meeting, the selectmen, upon a like application, shall call such annual or special meeting, by causing a like notice, signed by them, to be posted up, as prescribed in a preceding section; that is, seven days before the day of meeting.

An application was made in this case to the prudential committee, to call a meeting on the 18th day of October. This meeting they refused to call, though they did, within ten days from the time of the application, call a meeting to be holden on the 18th day of November. This was without doubt a special meeting, and one which the prudential committee might, by the fourth section of the chapter referred to, have had the power to call. But it was not the special meeting that they had been requested to call. The plain design of the law is, to enable three or more voters of each school district to require a meeting of the district to be held for special purposes; and the prudential committee are not intrusted with the power to defeat the wishes of such voters in that particular; for, if they refuse to call the meeting, the selectmen must do it. If the prudential committee have the power to postpone the meeting applied for, to a day to be selected by themselves, it is plain that no special meeting could ever be held against their will; for all such applications might be

satisfied by calling meetings on the days of the annual meeting. It is impossible to believe that the statute can receive such a construction. It is therefore plain that the prudential committee refused to call the special meeting applied for by the three or more voters who signed the application.

The application was made on the twenty-seventh day of September, and the "ten days after application made" expired with the seventh day of October following; and it is said that the action of the selectmen was premature, because their warrant or notice calling the meeting of the district bore date of the seventh of October. But the date was immaterial. It did not in fact receive the signatures of a majority of the selectmen and become a proper warrant until the 8th of October.

The mode of calling the meeting is "by posting up a notice." This was not done until the 8th of October, which was after the expiration of the ten days of deliberation allowed to the prudential committee. There is nothing in the statutes that requires the application to the selectmen to be postponed until the expiration of the ten days, or which precludes the selectmen from preparing a warrant in advance of the occasion demanding its use. The posting up the notice, which is the efficient act, was not premature; and was clearly justified by the neglect and refusal of the prudential committee, for the space of ten days, to call the special meeting applied for.

These parties have the control that parties ordinarily have over their case in court. It is not the part of the court to pronounce upon the validity of a defence that has not been set up, or that has been withdrawn. To do that would be an invasion of the rights of the parties. They are regularly in court by their counsel, and the defendant is not to be compelled to remain here, litigating against their will expressed in the only form in which a body corporate can express their will, merely because the facts, as

they now appear, disclose a sufficient defence. It is not to be assumed that the district is exercising its legal powers to the wrong and detriment of any of the inhabitants.

There must therefore be, by the agreement,

*Judgment for the plaintiff.*